**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DWAIN M. ROBBINS,**

    Plaintiff**,**

vs.                                                                Case No. 8:06-CV-919-T-24EAJ

**MICHAEL J. ASTRUE**[1]
**Commissioner of**
**Social Security,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the complete administrative record, and the pleadings and memoranda submitted by the parties in this case.[3]

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The district judge has referred this matter to the undersigned for consideration and a report and recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

[3] On April 16, 2007, the Commissioner filed a supplemental transcript to the administrative record, attaching page 8 of the ALJ's decision, which was inadvertently left out of the record filed by the Commissioner (Dkts. 20, 21). Plaintiff received a complete copy of the ALJ's decision, as

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[4]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges a disability onset date of August 15, 2001, due to depression, anxiety, post-traumatic stress disorder, diabetes mellitus with peripheral neuropathy, and alcoholism. (T 19, 62) The ALJ held a hearing on Plaintiff's application for SSI and DIB on August 15, 2001. (T 864) Fifty-two years old at the time of the hearing, Plaintiff has a college education and has past work

---

he discussed the contents of the missing page in his Memorandum in Support of Plaintiff's Complaint (Dkt. 18 at 5 fn. 2).

[4] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

experience as a public relations representative, sales representative, cook, waiter, bartender, and construction worker. (T 18, 880-84)

In a decision dated September 23, 2005, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. (T 28) The ALJ determined that although Plaintiff suffers from the severe impairments of depression, anxiety, diabetes mellitus with peripheral neuropathy, and alcoholism, these impairments do not meet or medically equal one of the impairments in Appendix 1, Subpart P, Regulations No. 4. (Id.) More specifically, the ALJ found that Plaintiff is disabled in the sense that his chronic alcoholism meets Listing 12.09 (substance addiction disorders); however, the ALJ concluded that, absent alcoholism, Plaintiff would not be disabled. (T 24A, 26)

Further, the ALJ found that Plaintiff's allegations regarding the severity of his impairments are not entirely credible. (T 25) The ALJ concluded that Plaintiff has the following residual functional capacity ("RFC"):

> The claimant has the residual functional capacity, absent the effects of his alcohol abuse, to occasionally life and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours [3 hours] in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds. Handling with the non-dominant left upper extremity is limited to no frequent forceful gripping with the left hand. He must avoid concentrated exposure to extreme cold, vibration, and hazards, especially unprotected heights and uneven surfaces, and should not operate feel-operated controls with the left hand.

(T 28)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff's severe impairments, "without considering the effects of his alcohol abuse," do not prevent him from

performing his past relevant work as a public relations representative or sales representative. (T 28-29) Therefore, the ALJ determined that Plaintiff is not disabled under the Act.[5]

On March 17, 2006, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 6-9) Plaintiff filed a timely petition for judicial review. Plaintiff has exhausted all administrative remedies, and the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff raises three issues on appeal: (1) the Commissioner erred in finding that Plaintiff's alcohol abuse is a contributing factor material to the finding of disability; (2) the Commissioner erred in discrediting Plaintiff's testimony; and (3) the Commissioner erred in determining that Plaintiff can return to his past relevant work.

**A.** Plaintiff argues that the ALJ erred in finding that Plaintiff's alcohol abuse was a contributing factor material to the finding of disability (Dkt. 18 at 6). The Commissioner responds that none of Plaintiff's treating sources reached the conclusion that Plaintiff would be disabled if he stopped drinking (Dkt. 19 at 6).

In the Contract with America Advancement Act of 1996 ("CAAA"), Pub. L. No. 104-121, § 105(b)(1)(I), Congress amended the Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this

---

[5] A supplemental transcript filed by the Commissioner includes page 8 of the ALJ's decision which was not included in the original transcript. (T 24A)

subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The CAAA's implementing regulations provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of a disability" (the "material" determination). 20 C.F.R. § 404.1535. The key factor in making this determination is whether the claimant would still be found disabled if he stopped abusing drugs or alcohol. See 20 C.F.R. § 404.1535(b)(1). The claimant bears the burden of proof on this issue. Doughty v. Apfel, 245 F.3d 1274, 1276 (11th Cir. 2001).

In this case, the ALJ concluded that Plaintiff failed to meet the burden of showing that alcoholism is not a contributing factor to his disability. (T 26) In reaching this determination, the ALJ reviewed the medical evidence of record as well as the opinions of state agency physicians. As the Commissioner points out, no medical examiner found that Plaintiff would be disabled if he stopped drinking.

Neither side disputes Plaintiff's alcoholism.[6] The issue instead is whether substantial evidence supports the ALJ's finding that Plaintiff did not meet his burden of showing that he would be disabled even if he stopped abusing alcohol. The undersigned finds that it does.

Plaintiff contends that his diabetes mellitus with peripheral neuropathy, including the side effects of the medications he takes to control his diabetes, would still be present if he stopped drinking (Dkt. 18 at 7). Specifically, Plaintiff asserts that the pain, numbness, and tingling in his feet would persist even if he were to abstain from alcohol (Dkt. 18 at 7). Plaintiff also argues that his

---

[6] Plaintiff testified that he has been drinking alcohol heavily since his early 30s. Although he was sober at the hearing, he testified that he recently began drinking two fifths of vodka every day. (T 20) The record is replete with references to Plaintiff's chronic alcoholism.

5

mental impairments of depression and anxiety are so intertwined with his alcoholism that the three are impossible to separate, dictating a finding of "not material." In support, Plaintiff cites an August 30, 1996 internal Social Security Administration communication (the "Emergency Teletype"), which is attached to the Commissioner's response to Plaintiff's memorandum of law (Dkt. 19, Ex. A). This document, however, merely provides guidance for agency personnel reviewing the evidence and making the "material" determination.

Plaintiff's argument regarding his physical limitations misses the mark. The ALJ did not find Plaintiff disabled due to diabetes mellitus with peripheral neuropathy. (See T 22-24) To the contrary, the ALJ concluded that although Plaintiff suffers from diabetes mellitus, he does not have the associated neuropathy sufficient to meet Listing 9.08A.[7] Without this threshold finding of disability, the ALJ is not required to determine if Plaintiff's alcohol abuse is material to the impairment. See Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) (stating "the implementing regulations make clear that a finding of disability is a condition precedent to an application of [the "material" determination]"). Moreover, the ALJ's conclusion as to this point is supported by substantial evidence.[8]

---

[7] The ALJ stated that "the evidence in this case clearly establishes that the claimant has diabetes mellitus. . . . The claimant is also shown to have peripheral neuropathy, but his neuropathy is not shown to result in sustained disturbance of gross and dexterous movements, or gait and station . . ." as required to meet the listing. (T 22)

[8] In January 2002, although Plaintiff had been experiencing numbness in his left arm and hand and his right forearm since a hospital stay in November 2001, Plaintiff's treating physician at Bayfront Family Practice Center, Brian Mulbery, M.D. ("Dr. Mulbery"), noted that Plaintiff had a good grip bilaterally and normal upper extremity strength, suggesting that there was no significant limitation of function of either upper extremity. (T 22, 155) The next month, Plaintiff denied pain, numbness, and weakness during a follow-up exam. (T 153) The treating physician noted no obvious neurological defects, although it was difficult to tell due to Plaintiff's drunkenness at the time. (Id.) Plaintiff suffered frostbite to his feet when he passed out, intoxicated, outdoors in Maine during

Turning to the issue of whether Plaintiff's mental impairments would still be present absent his alcohol abuse, the ALJ determined that Plaintiff meets listing 12.09 pertaining to substance addiction disorders and that Plaintiff is disabled to this extent. (T 24A)  Listing 12.09 is met when the claimant has certain behavioral or physical changes associated with the regular use of substances that affect the central nervous system.  The ALJ concluded, however, that Plaintiff's other mental impairments do not meet the listing requirements for 12.04 (depressive syndrome), 12.06 (anxiety disorder), or 12.08 (personality disorder) alone or in combination. (T 24A)  The ALJ found that "[w]hen claimant is not drinking, he does not have any significant mental impairment." (T 24)

Substantial evidence supports this conclusion.  For example, the ALJ notes that Dr. Mulbery prescribed Zoloft for Plaintiff in January 2002. (T 155)  In March of that year, after he stated that he had stopped drinking, Plaintiff mentioned to Dr. Mulbery that his spirits were better on Zoloft, and his prescription was refilled. (T 152)  Later that month, Yvonne Chircop, D.O. ("Dr. Chircop") of Suncoast Center for Community Health ("Suncoast Center") noted that Plaintiff was responding to Zoloft after 18 days of sobriety and was feeling "a bit better." (T 314)  Social worker Larry Chambers, M.S.W. ("Mr. Chambers"), also of Suncoast Center, reported in March 2003 that

---

February 2003. (T 907) During a subsequent stay at the detoxification unit at Maine General Medical Center, his treating physician noted Plaintiff's lack of sensation in his toes and opined it was due to diabetic peripheral neuropathy. (T 678) The discharge summary prepared by the medical center, however, reported that the next day Plaintiff was able to "gingerly ambulate on his feet, and slowly got a bit of sensation back in his toes and soles." (Id.)  Later records also indicate that Plaintiff's extreme sensitivity in his feet is due to frostbite, not diabetes-related neuropathy. (T 205) Further, while examining Plaintiff at Suncoast Center for Community Mental Health in June 2003, Linda McCash, M.S. ("Ms. McCash"), a nurse practitioner, suggested that the numbness in Plaintiff's left arm that he experienced was not due to neuropathy but due to the acute event of passing out from excessive drinking with his arm in an awkward position. (T 23, 549) Therefore, the ALJ concluded that Plaintiff's diabetes mellitus with peripheral neuropathy is severe but not severe enough to meet the listing.

Plaintiff's mood was stabile, although it is unclear whether he was sober at the time. (T 312) Additionally, from February 13, 2003 through March 19, 2003, during a brief period of sobriety, his treating physicians did not report any significant psychiatric symptoms. (T 195-280, 678-692) In fact, in February 2003, Plaintiff reported that his Zoloft was helping his mood. (T 678) Additionally, in May 2003, Ms. McCash's progress notes reported that Plaintiff's mood was better on his medications after a two-week period of sobriety. (T 552) Also lending support to the ALJ's determination is the opinion of Roger Zimmerman, Ph.D. ("Dr. Zimmerman"), a state agency consultant who reported in October 2002 that Plaintiff had alcohol dependence and periods of anxiety that were likely related to his drinking but otherwise intact mental functioning. (T 168, 170)

Accordingly, the ALJ applied the appropriate analysis in reaching the conclusion that Plaintiff failed to meet his burden of demonstrating that he is disabled even absent his substance addiction disorder. While noting that Plaintiff has had no recent sustained periods of sobriety (T 26), the ALJ emphasized the opinions of Plaintiff's medical providers that indicate no mental disability in the absence of alcohol abuse. Importantly, as the Commissioner points out, no medical source determined otherwise. Further, the ALJ discussed evidence showing that Plaintiff's limitations would not be as severe if he stopped abusing alcohol, and he determined that Plaintiff "does not have any significant mental impairment" absent the limitations caused by his excessive drinking. (T 24) Because Plaintiff's remaining limitations would not be disabling, the ALJ concluded that Plaintiff's alcohol addiction was a contributing factor material to his determination of disability. Thus, the ALJ properly considered Plaintiff's alcohol addiction according to the statutes and regulations.

Plaintiff urges that his mental impairments and alcoholism are so intertwined that they are impossible to separate; therefore, a finding of "not material" is appropriate (Dkt. 18 at 7). Plaintiff cites the Emergency Teletype as supporting his argument. The Emergency Teletype is an internal Social Security Administration communication that poses questions and answers designed to provide guidance to agency personnel reviewing the evidence. Emergency Teletype, Dale Cox, Office of Disability, Social Security Administration, "Questions and Answers Concerning DAA from 7/2/96 Teleconference - Medical Adjudicators - ACTION," dtd. August 30, 1996. It recognizes that in cases involving multiple mental impairments, a medical and/or psychological consultant may not be able to project the limitations that would remain if the claimant stopped drinking. In such cases, the Emergency Teletype suggests, the consultant should record his findings to this effect and a finding of not material is appropriate. Id. at Answer 27. Case law is consistent with this. See Clark v. Apfel, 98 F. Supp. 2d 1182, 1185 (D. Or. 2000) (remanding case where ALJ determined that the plaintiff's addictions were material to his disability while at the same time finding that it was impossible to separate the plaintiff's substance abuse from his other mental disorders).

That situation is not present here, however. No medical examiner has reached the conclusion that Plaintiff's mental impairments are so intertwined that they are inseparable, the situation to which the applicable portions of the Emergency Teletype are addressed. Further, state agency reviewer Thomas Knox, Ph.D. ("Dr. Knox") reviewed the medical evidence in October 2002 and found that Plaintiff's mental impairments, absent his alcohol abuse, were not severe. (T 174-186)

As mentioned, the ALJ held that Plaintiff suffers from the severe mental impairments of depression and anxiety but that the impairments do not meet a listing. (T 22) Consistent with case law, the ALJ did consider "whether the claimant might still independently [absent alcohol abuse]

9

meet listing 12.04 [affective disorder], 12.06 [anxiety-related disorders] and/or 12.08 [personality disorders] as alleged." (T 24)  See Frederick v. Barnhart, 317 F. Supp. 2d 286, 293 (W.D.N.Y. 2004). The ALJ noted the medical records diagnosing Plaintiff with depression, adjustment disorder with mixed features, anxiety disorder, anxiety-panic disorder without agoraphobia, major depressive disorder without psychosis, substance induced affective disorder, antisocial personality disorder, and bipolar. (T 24)  The ALJ discussed whether Plaintiff would continue to suffer from his alleged mental impairments; however, after analyzing in detail the medical evidence cited above, the ALJ concluded "the claimant does not meet or equal listing 12.04, 12.06, or 12.08 alone or in combination." (T 24A)  Although the ALJ noted that drinking deepens Plaintiff's depression (T 24), he also explicitly determined that Plaintiff would not suffer from disabling psychological impairments if he abstained from abusing alcohol.  See Frederick, 317 F. Supp. 2d at 293. Therefore, the court finds that the ALJ properly concluded that Plaintiff's mental impairments are separable from his alcoholism.

Therefore, the ALJ's decision that Plaintiff failed to meet his burden of demonstrating that his alcoholism is material to his mental disabilities is supported by substantial evidence.

**B.**  Plaintiff contends that the ALJ did not employ the proper analysis in determining whether Plaintiff's testimony was credible.  Specifically, Plaintiff argues that his medical conditions could be reasonably expected to produce symptoms that are consistent with his description of his limitations and daily functioning.

The Eleventh Circuit applies a three part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  This standard requires the Secretary to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying

medical condition and (b) either (1) objective medical evidence confirming the severity of the pain resulting from the medical condition or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to cause the alleged pain. Id. Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition which can reasonably be expected to produce the symptoms of which a plaintiff complains is itself sufficient to sustain a finding of disability. This prong requires the Commissioner to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). The reasons must be based on substantial evidence. See Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that *could be reasonably expected* to produce those symptoms." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis in original) (citing 20 C.F.R. §§ 404.1529, 416.929).

An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citations omitted). The Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. See Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979). This is no less

true when evaluating the credibility of a claimant's testimony concerning pain. See generally Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989); Wilson, 284 F.3d 1219, 1226 (11th Cir. 2002).

In the instant case, the ALJ cites the Eleventh Circuit pain standard discussed above as well as the standards set by regulation in 20 C.F.R. §§ 404.1529 and 416.929. (T 24A) In addition, the ALJ's findings and discussion indicate that he was aware of and applied the proper standard. See Wilson v. Barnhart, 284 F.3d at 1226. Therefore, the only question remaining is whether the ALJ's assessment of Plaintiff's testimony regarding his pain and other restrictions is based on substantial evidence.

The ALJ recounted Plaintiff's testimony as to why he cannot work:

> It was stated that claimant could not return to public relations work because of stress and mental problems. He was unable to perform his work as a waiter because of frostbite to his feet and his finger problem. . . . He drops things a lot, but can hold a pen to write although his handwriting is not good. At times, the claimant is unable to open the last two fingers on the left hand because of pain. He cannot walk on uneven surfaces and needs railings to climb stairs. He does not have good balance and cannot stand on a chair or ride a bicycle. The claimant naps daily for one hour and has broken sleep at night. He does not like crowds and will not ride a bus if it is full of people. In a manic state the claimant will do about 200 chores and rearrange stuff in the refrigerator. During a depressive state the claimant will stay in bed for 3-4 days straight. The claimant has problems getting alon[g] with people, but used to have lots of friends.

(T 25)

The ALJ opined that "claimant is not credible in his description of limitations and daily functioning." (T 25) The ALJ gave significant weight to the opinion of consultative physician Steven Johnson, M.D. ("Dr. Johnson"), who noted that Plaintiff had no difficulty bending, handling objects, sitting, or standing. (T 173) Dr. Johnson indicated that claimant had a peroneal nerve injury to his left leg most likely related to pressure while intoxicated. (Id.) Dr. Johnson reported moderate limitations on Plaintiff's ability to walk on uneven ground, climb, and crouch. (Id.) However, he

did not prescribe any assistive device for Plaintiff's use when walking on uneven terrain. Dr. Johnson's opinion is consistent with Dr. Mulbery's, discussed above. (T 155)

Portions of Plaintiff's testimony also contradict his complaints of pain. Regarding the pain in his legs and his balance problems, Plaintiff testified that he can crawl, crouch, and sit, but that he cannot leap over a bench as he is running to catch a bus. (T 892) He also testified that in a manic state he has the ability to do 200 chores at once. Further bolstering the ALJ's credibility determination is the April 2002 opinion of Dr. Chircop, who reported a suspicion that Plaintiff's mood disorder was alcohol-related and that drinking certainly could deepen his depression. (T 308)

While acknowledging Plaintiff's limitations relating to his severe impairments, the ALJ ultimately concluded that Plaintiff's testimony as to the limitations posed by his conditions was not fully credible. (T 25) As discussed above, the ALJ's decision articulates numerous reasons for rejecting Plaintiff's subjective complaints of pain. See Allen v. Sullivan, 880 F.2d at 1203 (ALJ properly discredited a plaintiff's subjective complaints of pain when he specifically articulated at least three reasons for rejecting such testimony). Accordingly, Plaintiff's argument is without merit; the ALJ's decision to reject Plaintiff's subjective complaints is supported by substantial evidence.

**C.** Plaintiff asserts that the ALJ erred in determining that Plaintiff could return to his past relevant work as a public relations representative or sales representative because the questions the ALJ posed to the VE did not fully incorporate all of Plaintiff's mental and physical limitations as demonstrated by the objective medical evidence. Specifically, Plaintiff states that the ALJ's hypothetical questions to the VE did not incorporate Plaintiff's inability to deal with stress, inability to deal with people, inability to concentrate for more than 10 minutes at a time, and the extreme fatigue which

causes him to nap daily (Dkt. 18 at 10).    Based on these limitations, Plaintiff argues, there would be no jobs in the economy he could perform.

Once a claimant has met his initial burden of showing that he cannot do past work, the testimony of a VE is generally required to determine whether the claimant's RFC permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir. 1986) (citation omitted). The Commissioner may use this vocational testimony to show that there are other jobs in the national economy which plaintiff can perform. Id. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987)). The ALJ is only required to include those restrictions he recognizes in the hypothetical question to the VE. See Bowling v. Shalala, 36 F.3d 431, 435-36 (5th Cir. 1994).

In this case, at step four in the disability evaluation process, the ALJ determined that Plaintiff retained the RFC to perform his past relevant work if he stopped abusing alcohol. (T 28) Therefore, the ALJ did not need to reach step five, where the burden shifts to the Commissioner to identify possible jobs in the economy a claimant may be able to perform given his RFC; Plaintiff never met his initial burden of demonstrating that he cannot do his past work. See Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (stating that the ALJ is not required to elicit testimony from a vocational expert in determining whether a plaintiff can return his former work).

The ALJ appropriately disregarding Plaintiff's mental impairments in crafting Plaintiff's RFC because of the finding that  Plaintiff does not have any severe mental limitations absent his alcohol abuse. (T 27)

Even though the ALJ did not need to elicit vocational expert testimony at the hearing, he did so. (T 28-29, 914-22) There is a discrepancy in the RFC finding in the ALJ's decision (T 28, Finding 6) and the RFC hypothetical provided to the vocational expert ("VE") at the hearing (T 916) regarding whether Plaintiff's left hand was non-dominant or dominant. Plaintiff testified at the hearing that he was left-handed. (T 880) It appears that the reference in the ALJ's decision to Plaintiff's left hand being "non-dominant" is a typographical error. This is so because the vocational expert responded to the hypothetical question at the hearing by stating that Plaintiff could perform his past work as a public relations or sales representative even though, among other limitations, "...handling with the dominant left upper extremity would be limited to no frequent forceful gripping with the left hand..." and that Plaintiff would be "unable to operate field operated controls with the left hand, which would be the dominant hand." (T 916) [9]

Accordingly, the error in the ALJ's decision in referring to the Plaintiff's left hand as the non-dominant hand is harmless error and does not warrant reversal or remand because the transcript indicates the ALJ understood Plaintiff's left hand to be dominant. See generally Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

---

[9] It also appears that the ALJ gave Plaintiff a more restrictive RFC in his left hand than the medical records suggested. For example, the ALJ gave significant weight to Dr. Johnson's October 2002 report, described in the previous section, indicating that Plaintiff's dexterity was normal despite discomfort in gripping with his left hand and decreased grip strength. (T 173) Additionally, in January 2002, Dr. Mulbery noted that while Plaintiff's numbness in the fingers on his left hand was continuing, Plaintiff had a good grip bilaterally and normal upper extremity strength, suggesting there was no significant limitation of function of either extremity. (T 155) In February 2002, Plaintiff denied having any numbness and no obvious neurological defects were noted. (T 153)

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income payments is therefore affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses;

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Dated:** August 1, 2007

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636(b)(1).